HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EXEL INDUSTRIES SA, SAMES KREMLIN SA and SAMES KREMLIN INC.,

Plaintiffs,

v.

SPRAYFISH, INC., *et al*.,

Defendants.

Case No. 2:22-cv-00691-RAJ

**ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

This matter comes before the Court on Plaintiffs' motion for a preliminary injunction. Dkt. # 19. For the reasons below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiffs allege that Defendants unlawfully used its federally-registered trademarks (KREMLIN® and XCITE®) and unregistered marks (ATX™ and AVX™) to sell replacement parts for Plaintiffs' paint spraying equipment (the "Marks"). Dkt. # 19 at 2. Plaintiff Sames Kremlin, Inc. has for many years implemented and made sales of paint spraying equipment and replacement parts for such equipment using the Marks in Washington and other states in the western regions of the United States. *Id.* Such sales have been made through and with the assistance of Finishing Consultants, an authorized representative located in Everett, Washington. *Id.*

Finishing Consultants employed Defendant Kevin Backman for about thirteen years as a sales representative. Dkt. # 19 at 2; Dkt. # 22. Plaintiffs allege that Defendant

ORDER – 1

Backman, along with Defendant Shawn Backman, incorporated Defendant Sprayfish, Inc. to compete in the promotion and sale of aftermarket parts for Plaintiffs' paint spraying equipment. Dkt. # 19 at 2-3. Plaintiffs further allege that Defendants published and disseminated advertising materials that made excessive and misleading use of the Marks and created a likelihood of confusion among consumers. Dkt. # 19 at 3.

Plaintiffs filed their complaint on May 23, 2022. Dkt. # 1. On June 16, 2022, Plaintiff moved for an injunction alleging that Defendants' use of the Marks confuses customers into believing that Defendant is affiliated with, or endorsed by, Plaintiff. Dkt. # 19. Defendant opposes the injunction. Dkt. # 25.

## II.  DISCUSSION

The standards for preliminary injunctions in trademark infringement suits are essentially the same as for preliminary injunctions in other types of suits. *See Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). To obtain a preliminary injunction, a party must show: (1) it will likely succeed on the merits, (2) it will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) the public interest favors an injunction. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). A likelihood of success on the merits is a threshold issue; if a plaintiff fails to show a likelihood of success, the Court need not consider the remaining *Winter* elements. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Defendants contend that Plaintiffs must meet the "more stringent preliminary injunction standard" applied to mandatory injunctions. Dkt. # 25 at 21. Plaintiffs' requested injunction required Defendants to take affirmative action—to remove (and cease using) advertising and other materials that use the Marks. Dkt. # 19 at 6. This relief is treated as a mandatory injunction, because it "orders a responsible party to 'take action.'" *Marlyn Nutraceuticals,* 571 F.3d at 879 (citation omitted). As the Ninth Circuit has historically cautioned, a mandatory injunction "goes well beyond simply maintaining the status quo

ORDER – 2

*pendente lite* [and] is particularly disfavored." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citations omitted). The "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. Since the preliminary injunction sought by Plaintiffs is mandatory in nature, they have a greater burden to show this relief is warranted. *See id*.

      **A.**    **Likelihood of Success on the Merits**

A plaintiff claiming trademark infringement under the Lanham Act must show (1) the alleged infringer used the plaintiff's valid trademark or trade dress "in commerce," and (2) the use is "likely to cause confusion, or to cause mistake, or to deceive consumers" as to the source of the product. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (internal quotation omitted); *see also* 15 U.S.C. § 1114(1). Both registered and unregistered marks can constitute valid trademarks under § 43(a). Although Plaintiffs fail to provide evidence regarding its use of the unregistered ATX™ and AVX™ marks in commerce, neither party questions the validity of those marks. Accordingly, for the sake of decision the motion, the Court presumes that Plaintiffs meet their burden of proving validity of the Marks.

To prove the second element of trademark infringement, a plaintiff would typically need to establish that a defendant's use of the marks is likely to confuse consumers under the *Sleekcraft* factors. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). However, the *Sleekcraft* factors do not apply when "a defendant uses the mark to refer to the trademarked good itself." *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1175 (9th Cir. 2010). When this threshold condition is met— meaning that the mark is used to refer to the trademarked good—courts apply the nominative fair use analysis. *Id*. Once a defendant meets this threshold condition, "[t]he burden reverts to the plaintiff to show likelihood of confusion." *Id*. at 1183.

ORDER – 3

### A.      Do Defendants use the Marks to refer to the trademarked good?

The answer to this question is "yes." Despite claiming this is not a nominative fair use case, Defendants plainly state that their website "refers to plaintiffs' products by their recognized trademarks and tradenames." Dkt. # 25 at 9. In the Ninth Circuit, it is a question of nominative fair use even where the plaintiff's mark is used "to describe the plaintiff's product for the purpose of, for example, comparison to the defendant's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). The threshold condition of the nominative fair use test has been met.

### B.      Nominative Fair Use

There are three factors for Ninth Circuit courts to consider under the nominative fair use analysis. Courts analyze whether (1) the product or service in question is "readily identifiable" without the use of the trademark, (2) the defendant only used so much of the mark as is reasonably necessary to identify the product or service, and (3) the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Toyota*, 610 F.3d at 1175–1176 (citing *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 8021 (9th Cir. 2002)).

The Ninth Circuit's opinion in *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) is instructive in applying the nominative fair use analysis. The defendants in that case were auto brokers for Lexus vehicles; and Toyota Motor Sales U.S.A. objected to their use of the Lexus trademark on their website. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). For the first step of the nominative fair use analysis, the panel found that it was enough that the defendants' need to communicate that they specialize in Lexus vehicles, and that was nearly impossible to do without mentioning Lexus. *Id.* at 1180-81.  For the second and third steps of the nominative fair use analysis, the panel found that the defendant had ceased using the stylized mark and "L" logo, and that a disclaimer stated, prominently and in large font, "We are not an authorized Lexus dealer or affiliated in any way with Lexus." *Id.* at 1181.

ORDER – 4

Ultimately, the panel found that "reasonable consumers would arrive at the [defendants'] site agnostic as to what they would find," and that "they would immediately see the disclaimer and would promptly be disabused of any notion that website is sponsored by Toyota." *Id.* at 1182. Since there was no risk of confusion as to sponsorship or endorsement, the defendants' use of the Lexus mark was fair. *Id.*

The *Toyota* result is consistent with the Ninth Circuit's historical approach. The Court reached a similar conclusion nearly forty years before in a suit where Volkswagen sued an automobile repair business specializing in Volkswagen vehicles. *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969). That panel affirmed the district court's refusal of an injunction over the repair shop use of "Volkswagen" or 'VW' in its advertising. *Id.* at 352. Notably, that panel found that the repair shop's prominent use of the word 'Independent' whenever the terms 'Volkswagen' or 'VW' appeared in its advertising was sufficient to distinguish his business to the eye of a customer. *Id.* (internal citations and quotations omitted). Additionally, the fact that the defendant did not use Volkswagen's distinctive lettering style or color scheme, nor display the encircled 'VW' emblem, contributed to finding nominative fair use. *Id.*

After applying the *Toyota* factors here, the Court concludes that Plaintiffs have not met their burden of showing that the facts and law clearly favor their position. *Stanley*, 13 F.3d at 1320.

1. **Readily identifiable.**

The first factor analyzes whether Plaintiffs' product is readily identifiable without use of the mark. *Toyota*, 610 F.3d at 1175. Plaintiffs admit that the marks "could conceivably be necessary to describe the nature of Defendants' products." Dkt. # 19 at 6. Indeed, it is difficult to see how Defendants could advertise replacement parts specifically for Plaintiff's paint spraying equipment without using the Marks. Plaintiffs simply conclude that Defendants cannot market their products as "Kremlin® Replacement Parts" or "Xcite® Replacement Parts or "AVX® Replacement Parts," or "ATX® Replacement

ORDER – 5

Parts." Dkt. # 19 at 6. But forcing Defendants to rely on long, descriptive phrases is not required by the law. *Welles,* 279 F.3d at 802. This factor favors Defendants.

### 2. Necessary Use of the Mark.

The second factor analyzes whether the defendant used more of the mark than necessary. *Toyota*, 610 F.3d at 1176. For instance, a defendant may be entitled to make use of the plaintiff's word mark without using the mark's distinctive lettering or color scheme. *New Kids on the Block v. News Am. Publ'g, Inc*. 971 F.2d 302, 308 n. 7 (9th Cir. 1992); *Volkswagenwerk*, 411 F.2d at 352. Plaintiffs' motion barely addresses this factor, stating only that Defendants' use of the Marks "goes far beyond a minimal or 'necessary' level and impermissibly produces likely confusion." Dkt. # 19 at 6. Again, it is Plaintiffs' burden to show that there is no nominative fair use. *See Toyota*, 610 F.3d at 1182–83. In any event, it does not appear that Defendants have used a distinctive lettering or color scheme associated with the Marks. This factor favors Defendants.

### 3. Sponsorship or Endorsement.

The third factor analyzes whether Defendants' falsely suggested sponsorship or endorsement by Plaintiffs. *Toyota*, 610 F.3d at 1176. In the context of a website, visual cues, such as imagery and logos, may lead consumers to believe that they are visiting an authorized seller of the trademarked product. *Id.* at 1182. Here, Defendants' website contains a disclaimer reading, "Sprayfish replacement parts for SAMES KREMLIN® brand equipment are not manufactured or warranted by SAMES KREMLIN®." *See, e.g.*, Dkt. # 20 at ¶¶ 5-13. Above the disclaimer, and pressed against a distinct red background, are the words: "Our Direct Replacement Parts are not manufactured by the OEM." *Id*. at ¶¶ 10, 12. Defendants also feature the term "NON-OEM" next to product listings that use Plaintiff's marks. *See, e.g.*, *id.* at ¶ 6. Such disclaimers usually negate any hint of sponsorship or endorsement. *Toyota*, 610 F.3d at 1177. And while Defendants feature pictures of Plaintiffs' spray paint gun on the website, Defendants contends that Plaintiffs specifically approved this use. Dkt. # 25 at 14; *see* Dkt. # 28 at 27-28 (Ex. F). At the very

ORDER – 6

least, Plaintiffs have not shown the facts and law clearly favor their position.

***

Since Plaintiffs have not shown that the law and facts clearly favor their position, the Court need not consider the remaining *Winter* elements.

### III.  CONCLUSION

For the reasons above, the Court **DENIES** Plaintiffs' motion.  Dkt. # 19.

DATED this 22nd day of November, 2022.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 7